INHAB'TS OF RICHMOND *versus* INHAB'TS OF THOMASTON.

Upon a question of his settlement, the declarations of a pauper while in the act of removing, or while doing an act with reference to removing from one town to another, are admissible in evidence to show his intention as to changing his residence.

But his declarations, while about his ordinary business, as to his future intentions or expectations, cannot be received.

Facts within the *personal knowledge* of a deponent, tending to show an intention of the pauper to change his residence, may be given in evidence; but when from the whole answer *it is manifest that the facts stated, were merely communicated by the pauper to the deponent, they must be excluded.*

A physician who has contracted with a town to furnish the necessary medical services for their poor, at a stipulated price, with such additional sum as they should recover for his services rendered to paupers chargeable to other towns; in a suit by the town to recover for such services and other supplies, *he* is a competent witness, *after* his portion embraced in the suit has been paid by the town,

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J., presiding. ASSUMPSIT.

The action was for supplies furnished for the support of Joseph D. Lombard, wife and child, whose settlement was alleged to be Thomaston.

The principal question was the place of their settlement.

It appeared he was first seen in Thomaston in April, 1844, and hired out there for a few months. In the spring of 1845, he was coasting, afterwards was a common mariner in vessels sailing out of Thomaston, and the testimony tended to show, that he lived there more than five years together.

In May, 1846, the pauper was married in Thomaston, and the testimony of the widow, (the said Joseph D. being dead,) tended to show that four days after, he went to sea, and after remaining a short time she went to Lincolnville on a visit, and was in Camden at her sister's a part of the summer. He returned from sea in the summer of 1846, sick and went where his wife was at Camden on a visit. When he returned from sea in the summer of 1847, he found her there on a visit and stayed there a number of weeks.

It appeared that Lombard, after remaining in Camden six weeks in the summer of 1847, did, for the first time, go to keeping house with his wife in Thomaston, not having before kept house at any place. He continued to live there until March, 1850.

The defendants called one Joel R. Thompson, who testified that he sailed in the schooner Heard with Lombard in January, 1847, to New Orleans; that on his way out he said he should not live any longer in Thomaston; he spoke of it several times on their way out, but did not say he should reside at New Orleans; that he said nothing about moving when he returned home; that he did say he expected his wife was at Camden, and when he returned he was going to some other town. He stated on the way out at what place he was going to reside after his return from New Orleans; that it was other than Thomaston; but the witness was not allowed to state where he said he was going to reside, it being objected to.

The defendant introduced the deposition of Chas. Wormwell, a portion of which related to a conversation he had with Lombard at the time he was putting his dunnage on board the Heard in Jan. 1847, as to his intention of going to Camden to live, and a subsequent conversation of a similar import while Lombard was on board the Heard in the harbor and about going to sea. This part of the deposition was excluded. The part excluded was in these words, "he informed me that he expected to have a vessel which he was to command in Camden, when he returned in the spring of 1847. He said he had some relations of his wife in Camden, who were going to assist him to a vessel. That he made arrangements for his wife to go to Camden as soon as she was done work at Mr. Levenseller's, (where she was when we left,) where he intended to meet her when he got home."

The plaintiffs called Dr. Libby, who testified as to his attendance on the pauper. On cross-examination it appeared, that in the year 1852, he had contracted with the

plaintiffs to doctor their poor for a specific sum, with the right as an additional sum, of what the town should collect for paupers having their settlement in other towns. A portion of the expenses incurred for Lombard, was embraced in the year 1852, for medical services. The Court, upon objection being made, held him to be an interested witness.

The witness then left the stand, but was afterwards recalled, and in answer to defendants' questions, stated that the overseers of Richmond had paid him the amount of the bill arising within the year, and although then objected to as interested, by defendants, he was admitted and testified to the services before spoken of.

The jury returned a verdict for plaintiffs. The defendants excepted to the rulings.

*Gould,* in support of the exceptions.

*Ingalls & Abbott, contra.*

RICE, J. — One material question in issue between the parties was, whether the paupers removed from Thomaston to Camden in the winter or spring of 1847. To prove such removal, the defendants proposed to introduce certain declarations of Lombard, made at the time he was about departing from Thomaston, on a voyage to sea, in the fall of 1846.

Declarations are often admitted in evidence, for the purpose of explaining the nature of a transaction which is then the subject of inquiry. Where it is necessary to inquire into a particular act, or the intention with which a person performs an act, proof of what the person said at the time of doing it, is admissible in evidence for the purpose of showing its true character. 1 Phil. Ev. 231.

The declarations of a trader, at the time of his departure from his house, or the realm, or of his absenting himself, are properly admissible in evidence as showing his intention, when the question is, whether he has committed an act of bankruptcy. 2 Phil. Ev. 329.

For the purpose of proving an assignment to have been made with the design of defrauding creditors, the declarations of the party, at the time of his signing and executing the instrument, are admissible in evidence as a part of the transaction, against the plaintiff claiming under him. 2 Phil. Ev. 385.

The principal points of attention are, whether the circumstances and declarations offered in proof, were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character. 1 Greenl. Ev. § 108.

Declarations to become part of the *res gesta*, must have been made at the time of the act done, which they are supposed to characterize; and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction. Per HOSMER, C. J., in *Enos* v. *Patten,* 3 Conn. 250. And the act performed, which may be thus explained, must be connected with, and constitute a part of the subject matter to be determined.

Thus, in the case of *Thorndike* v. *Boston*, 1 Met. 242, the question to be determined was, where was the plaintiff's place of residence. Upon that point his declarations made about the time of his departure from Boston, and while he was making preparations to go to Edinburg, as to his intentions, were held admissible.

So too, in the case of *Gorham* v. *Canton*, 5 Maine, 266, the declarations of the pauper, when setting out on a journey from one town to the other, were held admissible, to show the intention of the pauper.

The paupers in the case at bar, were married, but in indigent circumstances, having no habitation of their own. The husband was a common mariner; the wife a servant, living out in families, as a domestic. In the fall of 1846, the husband shipped as a seaman, on a voyage to New Orleans. His wife was then at service in a family in Thomaston. About the time of his departure on this voyage, he

made declarations as to his future hopes and intentions, as to business and residence. Those declarations were in part admitted, and excluded in part, at the trial. Exceptions are taken that all were not admitted.

The fact sought to be proved was, that the paupers moved from Thomaston to Camden. The primary question, then is, was the pauper *moving*, or doing any act with reference to *moving* from Thomaston, at the time he made the declarations testified to by the witness Wormwell? Most clearly not. He was then in the pursuit of his ordinary business, just starting on a voyage to sea, on which he was to be employed for several months. He was not then in the act of changing his residence; was not on his way to Camden, nor to any other place in search of a residence or home. He was doing no act in connection with a change of residence. His whole conversation had reference to his future expectations and intentions, after he should have completed the voyage upon which he was then entering.

Such being the situation of the pauper at the time of making the declarations testified to, if the Judge erred it was in admitting any part of the conversation.

It is objected that certain facts stated by the witness Wormwell, were excluded improperly. We think it is apparent that the statements by the witness, that Lombard had " made arrangements for his wife to go to Camden," &c. were a mere narrative of what Lombard had communicated to him, and not facts within the personal knowledge of the witness, and were therefore properly excluded.

The payment of the bill of Doct. Libby, by the town, extinguished any legal interest which he had in the event of the suit, and he was, after such payment, properly admitted.

*Exceptions overruled.*

SHEPLEY, C. J., and APPLETON and CUTTING, J. J., concurred.